```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

**ANGELA AMMONS,**

        **Plaintiff,**

  **vs.**                                   **Civil Action 2:09-CV-0277**
                                                   **Judge Holschuh**
                                                   **Magistrate Judge King**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION

      This is an action instituted under the provisions of 42 U.S.C. §§405(g)for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors* and the Commissioner's *Memorandum in Support*.

      Plaintiff Angela Ammons filed her application for benefits on May 11, 2005, alleging that she has been disabled since May 10, 2005. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      On May 27, 2008, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did Pamela Tucker, who testified as a vocational expert. *A.R.* 404-42. In a decision dated June 20, 2008, the administrative law judge found that plaintiff's severe impairments consist of bipolar disorder and panic disorder. *A.R.* 15. However, the administrative law judge concluded that plaintiff's mental impairments neither meet nor equal a listed impairment. *A.R.* 17. The administrative law judge went on to find that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: plaintiff is

limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements and involving only simple, work related decisions and presenting few, if any, work place changes. Plaintiff should have no interaction with the public and only occasional interaction with co-workers. *A.R.* 18. Although this residual functional capacity precluded the performance by plaintiff of her past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that there nevertheless exist a significant number of jobs in the regional economy that plaintiff can perform, including such jobs as dishwasher, laundry worker and office helper. *A.R.* 21. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *A.R.* 22. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 9, 2009. *A.R.* 3-5.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff was 30 years of age on the date of the administrative law judge's decision. She has a GED and prior relevant work experience as a home health aide, laborer and machine operator. She has not engaged in substantial gainful activity since her alleged date of onset of disability. Her insured status lapsed on March 31, 2008.

Plaintiff testified at the administrative hearing that she can no longer work: "It's been difficult to live my everyday life. I have a hard time dealing with my illness." *A.R.* 410. The record reflects a long history of bipolar disorder for which plaintiff received intermittent psychological treatment between July 1993 and March 1999. *A.R.* 111-66.

In June 2005, Jean Shooter, LPCC, a counselor with Moundbuilders Guidance Center, reported to the state agency that she began treating plaintiff in May 2005, while plaintiff awaited psychiatric services at the center. *A.R.* 168. Ms. Shooter also reported that plaintiff had poor stress tolerance, experienced panic attacks and lost her temper easily. As a result, according to Ms. Shooter, plaintiff experienced increased absenteeism at work. She was unable to successfully maintain work. *A.R.* 169. Ms. Shooter also reported that

plaintiff was overwhelmed with household chores, experienced panic attacks when shopping, preferred not to drive alone and had difficulty with banking and bill paying because of decreased concentration. *A.R.* 170.

On July 21, 2005, plaintiff was consultatively evaluated, at the request of the state agency, by J. Joseph Konieczny, Ph.D. *A.R.* 214-18. Plaintiff reported a history of periodic alcohol abuse, occasional marijuana use, three psychiatric hospitalizations and panic attacks. She complained of sleep difficulty, fairly severe feelings of depression over the prior 2 years, episodes of crying twice per week, sudden mood changes lasting approximately 30 minutes to several hours, anxiety attacks occurring every two weeks with significant chest pressure, difficulty breathing, sweating, feelings of apprehension and periods of agoraphobia. Plaintiff also experienced auditory hallucinations, the most recent occurring two weeks prior to the evaluation. Dr. Konieczny noted that plaintiff was quite capable of expressing herself in a clear and coherent manner. There was no evidence of any paranoid or grandiose thinking. Her general fund of information was adequate and she was able to perform logical abstract reasoning. *A.R.* 216. Plaintiff's insight was fair and she showed an adequate awareness of social judgment and conformity. Plaintiff functioned at a reduced level of efficiency, even though she managed to drive, engaged in household chores, attended to her children and husband, and was involved in occasional outside social activities with friends. Dr. Konieczny diagnosed a depressive disorder, NOS, and a panic disorder with agoraphobia. He assigned a GAF of 54. *A.R.* 218. According to Dr. Konieczny, plaintiff retained an adequate ability to concentrate and to attend to tasks and had a mild to moderate limitation

in her ability to relate to others and to deal with the general public. Plaintiff was moderately to severely limited in her ability to withstand stress and pressure. *A.R.* 217.

In August and December 2005, state agency psychologists reviewed the record and opined that plaintiff had moderate restrictions in activities of daily living, and in maintaining social functioning, concentration, persistence or pace, and had experienced one or two episodes of decompensation. *A.R.* 229. Plaintiff had moderate limitations in her abilities to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness and to respond appropriately to changes in the work setting. *A.R.* 233-35.  However, plaintiff remained capable of performing simple and some  moderately complex tasks in work settings. Plaintiff could work only in a fairly static routine and could not work in close proximity with others.  The state agency psychologists also noted that plaintiff lived with her husband and children, performed all of the cooking, could drive by herself, but experienced frequent panic attacks and had difficulty being around others. Although they opined that a diagnosis of bipolar disorder was not supported by the medical evidence, a diagnosis

of depression was. *A.R.* 235.

Patricia Forman, M.D., a psychiatrist at Moundbuilders, has treated plaintiff since September 2005. *A.R.* 253-54. Initially, Dr. Forman noted that plaintiff was taking Risperdal that had been prescribed by her family physician. She complained of mood swings with down episodes, lasting from ten minutes to a full day, and racing thoughts most of the time. *A.R.* 243. Dr. Forman diagnosed bipolar disorder I, most recent episode depressed with psychotic features, very rapid cycling type; generalized anxiety disorder versus panic disorder; and probable post-traumatic stress disorder. *A.R.* 253. Dr. Forman assigned a GAF score of 50. *Id.* Dr. Forman continued plaintiff's Risperdal and added Trileptal and Zoloft. *Id.*

In October 2005, Dr. Forman reported that plaintiff was "definitely better" but still having panic attacks with agoraphobia. Plaintiff's medications were adjusted. *A.R.* 241. In November 2005, Dr. Forman noted that plaintiff sat tensely; she still complained of racing thoughts, although the condition had improved. She was able to drive by herself but with extreme difficulty and panic. *A.R.* 249. In February 2006, Dr. Forman noted that plaintiff's bipolar disorder seemed to be in reasonable control but that her panic disorder was "touch and go." *A.R.* 246. In April 2006, Dr. Forman noted that plaintiff was "really struggling," was experiencing mood swings and nightmares. She was dysphoric much of the time. Dr. Forman continued plaintiff's medications and added Abilify. *A.R.* 245. In June 2006, plaintiff reported feeling overwhelmed by her children and complained of swinging moods. Dr. Forman adjusted plaintiff's medications. *A.R.* 271. In July 2006, plaintiff complained of trouble sleeping, which Dr. Forman attributed to

plaintiff's smoking at night.  *A.R.* 269.

Plaintiff also saw Ms. Shooter for two counseling sessions in the summer of 2006. The sessions focused on family relationships, symptoms and stressors, and ways to manage plaintiff's moods and symptoms. *A.R.* 258-59.

In September 2006, plaintiff's medication was again adjusted by Dr. Forman. *A.R.* 261.  In October 2006, Dr. Forman noted that plaintiff was having difficulty adjusting to the new medication; however, considering the enormity of the change, Dr. Forman believed that plaintiff was doing reasonably well. *A.R.* 291. In December 2006, plaintiff was very happy that her daughter was meeting with some success in school. *A.R.* 336-37.

Plaintiff attended five therapy session in 2007 with Ms. Shooter to address family stressors and relationships. *A.R.* 293-96, 307.

In January 2007, plaintiff complained to Dr. Forman of panic attacks on the way to her son's wrestling practice sessions; sometimes she had to leave. *A.R.* 335. Dr. Forman adjusted plaintiff's medications and, by the end of January, plaintiff reported that she was feeling better.  *A.R.* 334. Dr. Forman commented on plaintiff's noticeable improvement. *Id.*

Plaintiff was hospitalized from April 3 to April 6, 2007, for increased depression over the prior three to four weeks, auditory and visual hallucinations, severe paranoia and suicidal ideation with a plan. *A.R.* 341-89.  A toxicology report was positive for THC.  *A.R.* 321. She reported that she had cut back on her medications because she was feeling numb.  She was treated with medication.  Although she reported some anxiety, she was much better on discharge. *A.R.* 368.

7

Dr. Forman completed a medical source statement in May 2007. *A.R.* 328-29. According to Dr. Forman, plaintiff's abilities to follow work rules, use judgment, respond appropriately to changes in routine setting, relate to co-workers, interact with supervisors, function independently without special supervision, understand, remember and carry out detailed, but not complex job instructions and manage funds/schedules were fair. However, plaintiff had poor or no ability to maintain attention and concentration for extended periods of two hour segments, maintain regular attendance and be punctual within customary tolerances, deal with the public, work in coordination with or proximity to others without being unduly distracted or distracting, deal with work stressed, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, understand, remember and carry out complex job instructions, socialize, behave in an emotionally stable manner, relate predictably in social situations and leave home on her own. *A.R.* 328-29.

Dr. Forman continued to treat plaintiff through at least February 2008. *A.R.* 391. Her diagnoses remained the same and she continued to adjust plaintiff's medications. Plaintiff continued to experience stress over family and financial issues; she experienced episodes of tension, anxiousness and racing thoughts with reduced sleep, and at times felt exhausted and overwhelmed. *A.R.* 293-96, 297-311.

In March 2008, Dr. Forman completed another medical source statement. According to Dr. Forman, plaintiff had a good to fair ability to follow work rules, use judgment and function independently without special supervision; she could follow simple instructions and relate to

co-workers. Plaintiff had a fair ability to respond appropriately to changes in routine settings, to deal with work stresses, and to relate to supervisors. Plaintiff had poor to no ability to maintain attention and concentration for extended periods of two hours segments, to maintain regular attendance and be punctual within customary tolerances, to deal with the public, to complete a normal workday, and to work closely with others without distractions. *A.R.* 393-94.

In his decision, the administrative law judge rejected Dr. Forman's May 30, 2007 and March 8, 2008 extremely restrictive assessments of plaintiff's ability to engage in work-related activities.  Plaintiff challenges this finding, arguing that the administrative law judge improperly failed to provide "good reasons" for the weight he accorded the opinions of Dr. Forman.

When an administrative law judge rejects the opinion of a treating physician, he must give "good reasons" for the weight given to the opinion of that treating source. *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). *See also,* 20 C.F.R. §404.1527(d)(2). In meeting this standard, the administrative law judge must consider certain factors, specifically "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* The administrative law judge's reasons must also be based on evidence in the record and "be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight." *Id.*

In this case, the administrative law judge characterized Dr. Forman's opinions as "conclusory with little explanation[,] contradictory of the opinions of other examining physicians. . . and . . . failed to supply a function by function analysis of her opinion." *A.R.* 19 – 20.

> It was reported by Dr. Konieczny [the state agency examining psychologist] that the claimant's ability to concentrate appeared adequate, she showed adequate ability to perform logical reasoning, he reported that she had only a mild to moderate impairment in her ability to withstand stress, deal with the general public and she would need some supervision in management of daily activities and with handling of her funds.  He reported that she had a global assessment of functioning of 54 which indicated that the claimant was experiencing moderate symptoms or moderate difficulty in social, occupational or school functions.
>
> . . . Furthermore, the claimant has already reported that she was able to attend to her children and perform household chores.  She also took in a 17 year young woman and her two very young children.  This suggests an ability to deal with family stress and controversy within her home on a daily basis.  Furthermore, the claimant testified at the hearing that she was able to drive her daughter to soccer games and practice, do laundry and cook.
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence that although the claimant has a bipolar disorder with anxiety, the claimants's allegations of significant functional limitations are not fully credible.  Treatment reports and records clearly show[] that the claimant's symptoms were controlled and stable when she fully participated in counseling and took her medications as prescribed.

*A.R.* 20 (citations to record omitted).

This Court concludes that the administrative law judge's evaluation of Dr. Forman's assessments was not deficient.  Although the administrative law judge did not use the precise terms contained in 20

C.F.R. §404.1527(d)(2), the substance of his evaluation adequately addressed the requisite factors. *See id.* Moreover, and as the administrative law judge noted, the two-page Medical Source Statement forms completed by Dr. Forman in May 2007 and March 2008 offer no explanation for the doctor's extremely restrictive assessment, nor do they contain reference to signs or symptoms supportive of her assessment of plaintiff's ability to engage in work-related activities. *See A.R.* 328-29, 393-94. Furthermore, and as the administrative law judge also noted, Dr. Forman's own treatment notes do not support her bleak assessments. *See, e.g., A.R.* 237-73, 291, 297-11, 330-92. After one month on medication, Dr. Forman noted that plaintiff was "definitely better." *A.R.* 241. In February 2006, plaintiff's bipolar disorder was in reasonable control. *A.R.* 246. In July 2006, plaintiff was stable. *A.R.* 267. In April 2007, after plaintiff's hospitalization – caused by her own reduction in her prescribed medication and self medication -- Dr. Forman noted that plaintiff was smiling, cheerful and really in a good, solid mood. *A.R.* 302. In July 2007, Dr. Forman noted that plaintiff "definitely looked better." *A.R.* 299.

In short, because Dr. Forman's assessments are conclusory, and because her own records do not provide a meaningful evaluation of plaintiff's mental work abilities, Dr. Forman's conclusions carry little if any probative value in this case. *See Simons v. Barnhart*, 114 Fed. Appx. 727, 733-34 (6th Cir. 2004); *see also Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986); *see also* 20 C.F.R. §404.1527(e)(1).

Plaintiff next asserts that the administrative law judge rejected Dr. Forman's opinions by relying on distortions of plaintiff's

11

testimony about her daily activities.  The Commissioner's regulations require the administrative law judge to consider Dr. Forman's opinions in light of the evidence of record, including plaintiff's testimony. *See* 20 C.F.R. §§404.1527(b)-(e). Plaintiff testified that she drives her daughter to soccer games and her son to wrestling practice and matches, that she exercises, does laundry, cleans, cooks, takes care of her husband, two children, and a 17 year old and her infant; she maintains a joint checking account and credit cards in her name and socializes with family and friends. *See A.R.* 411-31. Substantial evidence supports the administrative law judge's finding that plaintiff's "allegations of significant functional limitations are not fully credible." *A.R.* 20.

In short, the Court concludes that the administrative law judge's decision applied all applicable laws and standards regarding plaintiff's claims and that the administrative law judge's findings and conclusions enjoy substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b)(2).

The parties are specifically advised that failure to object to

the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, 18 Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date: July 23, 2010                    s/Norah McCann King
                                      Norah McCann King
                                 United States Magistrate Judge